## MIRANDA SPILIOS *vs.* JASON COHEN

No. 93-P-209.

Middlesex. February 17, 1994. - April 5, 1995.

Present: ARMSTRONG, PERRETTA, & FINE, JJ.*

*Attorney at Law*, Malpractice, Negligence. *Limitations, Statute of. Consumer Protection Act*, Demand letter.

An action brought by a plaintiff against her former attorney for malpractice was not barred by the three-year statute of limitations, G. L. c. 260, § 4, where the plaintiff learned of her harm and of the misrepresentations of her attorney within the limitations period and where, in any event, the attorney's continuing representation of the plaintiff tolled the statute of limitations. [338-342]

In a civil action, the plaintiff's claim for unfair consumer practices in violation of G. L. c. 93A was properly dismissed where the plaintiff's submission on the defendant's motion for summary judgment did not establish that the plaintiff had sent a demand letter in compliance with the requirements of G. L. c. 93A, § 9 (3). [342-343]

CIVIL ACTION commenced in the Superior Court Department on May 10, 1988.

The case was heard by *James F. McHugh*, J., on a motion for summary judgment.

*Kevin P. Curry* for the plaintiff.

*Catherine J. Savoie* for the defendant.

ARMSTRONG, J. This is an action by a former client against the attorney who represented her in her divorce action. The judge granted the defendant's motion for summary judgment on the plaintiff's legal malpractice counts on the ground that they were barred by the statute of limitations; and, as to the count for an alleged violation of G. L. c. 93A,

---

*Justice Fine participated in the deliberation on this case prior to her retirement.

§ 2, for failure to send the demand letter required by § 9(3). The plaintiff appeals.

Concerning the legal malpractice counts: the applicable statute of limitations is G. L. c. 260, § 4, as amended by St. 1981, c. 765, under which these counts would be barred if the plaintiff's cause of action accrued more than three years prior to the commencement of the action. The complaint was filed May 10, 1988. Three years before, on May 10, 1985, the defendant was representing the plaintiff in her divorce action, which was then mid-trial. The defendant contends that the plaintiff's action is barred because the evidence — her deposition and the affidavits of two other attorneys the plaintiff consulted because of her dissatisfaction with the defendant's representation of her — shows that in the period leading up to the trial the plaintiff had already concluded that the defendant was representing her negligently, by failing to conduct the discovery necessary to prove the value of the husband's business, and by failing to follow her instructions to accept the husband's then settlement offer (apparently made prior to March 29, 1985) of $800,000 plus the marital home, mortgage free. On May 4, a day or two before the start of trial, she hand delivered a letter to the defendant listing her grievances with his trial preparation and attempting, unsuccessfully, as it worked out (see below), to discharge him.

These facts alone, while showing that the plaintiff was aware prior to May 10, 1985, of the defendant's alleged negligence, do not show that the cause of action had accrued. Only when the trial ended (May 14) and the decision was rendered (May 21) was it possible to know whether the defendant's judgment in refusing to accept the settlement offer would be vindicated by a successful trial outcome. The judgment, the plaintiff alleges, gave her far less than the rejected settlement offer.[1] A cause of action for legal malpractice

---

[1]In her deposition the plaintiff stated that she instructed the defendant to accept the husband's settlement offer of $800,000 plus the marital home free of mortgage, and that the defendant refused to do so, stating that "I know I can get you $2 million."

"does not accrue until a plaintiff knows or reasonably should know that [she] has sustained appreciable harm as a result of a defendant's negligence." *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985). Contrast the facts in *Cantu v. St. Paul Cos.*, 401 Mass. 53, 57 (1987), where litigation resulting from the alleged malpractice was held to trigger the running of the limitations period, without waiting for judgment, because the legal expense involved in defending the action supplied the necessary harm. Other cases with the *Cantu* fact pattern include the *Massachusetts Elec. Co.* case, just cited, and *Salin v. Shalgian*, 18 Mass. App. Ct. 467, 470 and n.8 (1984). Here, in contrast, no harm could be shown until the judge's decision was announced.

There is an independent reason for concluding that the malpractice cause of action did not accrue until that time, at least. The probate judge, according to what the plaintiff says she was told by the defendant, would not permit the defendant to withdraw his appearance, and she had a conversation with the defendant in which he assured her that, unbeknownst to her, he and his staff had received the necessary financial statements and had deposed the husband — that the defendant, was, in effect, ready for trial. These representations, she claims, assuaged her doubts, and it was not until after the trial — within the statute of limitations period — that she learned the representations were false and that the defendant had gone into the trial unprepared. This all came before the judge in an affidavit filed by the plaintiff in opposition to the motion for summary judgment.[2]

---

[2]In some significant particulars the affidavit contradicts statements made by the plaintiff in her deposition, which was the basis, along with the May 4 letter of discharge, for the defendant's motion for summary judgment (as it applied to the malpractice counts). The defendant urges us to apply a rule of practice, often invoked in the Federal courts, giving no effect to a party's affidavit, submitted to avoid summary judgment, that directly contradicts that party's earlier statements made under oath, by deposition or otherwise. See, e.g., *Frankina v. First Natl. Bank of Boston*, 801 F. Supp. 875 (D. Mass. 1992), aff'd, 991 F.2d 786 (1993); *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991); *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir.

A decisive fact, in our view, is that, despite the earlier and implicitly withdrawn discharge, the defendant continued to represent the plaintiff throughout the trial, the result of which, a judgment giving the plaintiff less than the settlement offer, is the harm for which she claims damages. From portions of the summary judgment record not in conflict with the plaintiff's deposition (see note 2, *supra*), one may fairly infer that the probate judge declined to permit an eve-of-trial change of representation to delay the start of the trial and that the plaintiff, faced with the choice of continuing with the defendant as her attorney or going it alone, elected to retain his services at least through trial. That election brings the case within the continuing representation doctrine, adopted in *Murphy* v. *Smith*, 411 Mass. 133, 137-138 (1991), "which tolls the statute of limitations in legal malpractice actions where the attorney . . . continues to represent the plaintiff's interests in the matter in question." *Id.* at 137. The doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith." *Greene* v. *Greene*, 56 N.Y. 2d 86, 94 (1982), quoted in *Cantu* v. *Saint Paul Cos.*, 401 Mass. at 58. To be sure, it has no application where "[t]he innocent reliance which the continued representation doctrine seeks to protect is not raised by the facts." *Ibid.* But where, as can be inferred here, a plaintiff has made a decisive election to proceed to trial with his or her attorney, despite having strong misgivings about the quality of represen-

1985), cert. denied, 475 U.S. 1048 (1986). While earlier Massachusetts decisions showed hesitancy in following that practice, see *Guenard* v. *Burke*, 387 Mass. 802, 812 (1982), the trend after *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706 (1991), toward greater use of summary judgment has been reflected in an increasing tendency in the decisions to follow the Federal practice of disregarding eleventh hour affidavits that contradict earlier statements by the affiant made under oath. See, e.g., *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993); *American Employers' Ins. Co.* v. *Horton*, 35 Mass. App. Ct. 921, 923 n.2 (1993); *Morrell* v. *Precise Engr., Inc.*, 36 Mass. App. Ct. 935, 937 (1994). In any event, we need not consider that point because, even if we disregard the affidavit, the fact of the defendant's continuing representation of the plaintiff beyond May 10 requires the result we reach.

tation, it cannot be held as matter of law that the reliance protected by the doctrine, albeit less than total, has ceased to exist. Because the malpractice cause of action did not accrue until after May 10, 1985, the malpractice count should not have been dismissed.

The count for unfair consumer practices, G. L. c. 93A, § 2, was dismissed for want of the demand letter required by G. L. c. 93A, § 9(3). The sending of such a letter was not alleged in the complaint, as called for by *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704-705 (1975), *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975), and *Linthicum* v. *Archambault*, 379 Mass. 381, 385 (1979), and the defendant moved for summary judgment on the count, supported by an affidavit indicating that he never received such a letter. A demand letter is a condition precedent to commencing an action under G. L. c. 93A, § 9. *Ibid.* Such a letter, to comply with the statute, must be sent thirty days before the commencement of the action, must identify the particular act or acts alleged to be unfair or deceptive, and must identify the injury suffered as a result. *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 288 (1985). The plaintiff has the burden of alleging and proving the timely sending of a letter complying with the statutory specifications, and the defendant's motion for summary judgment, alleging omission to send such a letter, put on the plaintiff the obligation of showing that she would be able to sustain her burden of proof. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716.

Here the plaintiff responded to the motion with an affidavit stating that, unable to afford an attorney, she composed and wrote a demand letter herself and mailed it to the defendant. No copy of the alleged letter was attached to the affidavit, nor did the plaintiff allege that she retained a copy. While cross-allegations of mailing and nonreceipt typically create an issue of fact, *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman*, 302 Mass. 508, 509-510 (1939); compare *Commonwealth* v. *Crosscup*, 369 Mass. 228, 239-240 (1975), nothing in the plaintiff's submission shows that the letter

complied with the statutory prerequisites or even that the let-
ter was sent more than thirty days prior to commencing the
action. The plaintiff's submission did not adequately meet
her burden so as to avoid entry of summary judgment.

Accordingly, the judgment is affirmed as to count 2 and
reversed as to count 1. The case is remanded for further
proceedings.

*So ordered.*